COMCOA, INC., a Kansas corporation; and Southwest Utilities, Inc., an Oklahoma corporation, Plaintiffs–Appellants,

v.

NEC TELEPHONES, INC., a New York corporation; and NEC America, Inc., a New York corporation, Defendants–Appellees.

Nos. 88–1957, 88–2333.

United States Court of Appeals, Tenth Circuit.

April 26, 1991.

Joseph V. Giffin, Ernest Summers III, of Chadwell & Kayser, Ltd., Chicago, Ill., and Richard F. Campbell III, of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiffs-appellants.

* The Honorable David Sam, of the United States District Court for the District of Utah, sitting by designation.

D. Kent Meyers and Robert E. Bachrach, of Crowe & Dunlevy, Oklahoma City, Okl., and James A. Murray, Jared E. Peterson, and Fran Smallson, of Graham & James, San Francisco, Cal., for defendants-appellees.

Before MOORE and EBEL, Circuit Judges, and SAM, District Judge.*

EBEL, Circuit Judge.

Plaintiffs, Comcoa, Inc. and Southwest Utilities, Inc., were distributors of business telephone systems manufactured by defendants NEC Telephones, Inc. and NEC America, Inc. Plaintiffs brought suit in the United States District Court for the Western District of Oklahoma against defendants alleging: (1) price discrimination in violation § 2(a) of the Robinson–Patman Act; (2) intentional interference with plaintiffs' prospective economic relations; and (3) breach of an implied duty of good faith and fair dealing.[1] The district court granted summary judgment in favor of the defendants on the issue of the implied duty of good faith and fair dealing. After a jury trial, the jury found in favor of the defendants on plaintiffs' remaining claims of price discrimination and intentional interference.

Plaintiffs appeal the summary judgment order on the issue of the implied duty of good faith and fair dealing, the denial of a directed verdict on defendants' changing conditions defense, and the jury's verdict on the issues of price discrimination and intentional interference. Plaintiffs also appeal the district court's imposition of sanctions against plaintiffs for failure to comply with a discovery deadline. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

The dispute between plaintiffs and defendants involves the sale and distribution of two types of business telephone systems,

1. Although in plaintiffs' amended complaint they also allege violations of the Sherman Act and Clayton Act, those claims are not at issue on appeal.

Key Telephone Systems (616 and 1648 Key systems) and PBX Telephone Systems (NEAX 12, 22, and 2400 PBX systems). Defendants manufactured the telephone systems and sold them to authorized distributors who resold those systems to "end users." Plaintiff Comcoa was a distributor of defendants' products from 1979 until it sold its telecommunications assets to Southwestern Bell Telecommunications, Inc., ("SWBT") in 1984. SWBT is a subsidiary of Southwestern Bell Telephone Corporation ("Southwestern Bell"). Plaintiff Southwest Utilities became a distributor of defendants' products in 1981 and continues to distribute defendants' business telephone systems.

On January 1, 1984, pursuant to the consent decree in *United States v. AT & T Co.*, 552 F.Supp. 131, 226 (D.D.C.1982), *aff'd*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), AT & T divested itself of its regional Bell operating companies ("RBOCs"). Prior to the AT & T breakup, RBOCs rented to their customers business telephone systems that were manufactured by an AT & T affiliate. After the AT & T breakup, RBOCs, which included Southwestern Bell, sold telecommunications equipment manufactured by companies other than AT & T or its affiliates.

During 1983, defendants sought an agreement from Southwestern Bell to purchase defendants' business telephone systems after the AT & T breakup. The negotiations resulted in a contract under which, after January 1, 1984, SWBT would purchase $22 million worth of defendants' Key systems over a two-year period. In return, defendants were to give SWBT a volume discount of 12%. The 1648 Key systems sold to SWBT after March 1984 had some updated features not found in the 1648 Key systems sold to plaintiffs.

Defendants sought a similar volume discount arrangement with Communications Corporation of America ("CCA"). Under the negotiated contract, effective December 1, 1983, CCA agreed to purchase $5 million in Key systems over one year; in

return it received an 8% discount from defendants.[2] In January 1983, and in 1984, defendants and CCA entered into similar volume discount arrangements for purchases of PBX telephone systems. A volume discount arrangement was also given to Universal Communications System ("UCS") for its purchases of the PBX telephone systems. The agreement with UCS was executed in May 1984 and the discounts were to be effective as of November 1983.

Although plaintiffs were unable to purchase at the volume that SWBT could, in late 1983 and early 1984 plaintiffs sought similar volume discounts for purchase commitments of $3 and $5 million over a two-year period. Defendants refused to give plaintiffs any volume discount at that time.

In June 1984, defendants announced that volume discounts would be made available to all of their qualified distributors and that the volume discounts would be applied retroactively. Comcoa was offered a volume discount retroactive to December 28, 1983, which corresponds to when Comcoa first requested a volume discount. Comcoa rejected the discounts because, by the time defendants offered the volume discounts to Comcoa, it had agreed to sell its telecommunication assets to SWBT. Southwest Utilities was offered a volume discount retroactive to March 10, 1984, which corresponds to when it had originally requested a discount. Southwest Utilities rejected the discounts because it did not believe that it was being offered a discount program equivalent to that being offered to SWBT.

Plaintiffs allege that as a direct result of the volume discounts in favor of large distributors, plaintiffs lost sales causing Comcoa to sell its telecommunications assets to SWBT and causing Southwest Utilities permanent business injury. Plaintiffs brought suit alleging price discrimination, intentional interference with prospective business, and breach of an implied covenant of good faith and fair dealing.

The district court granted summary judgment in favor of defendants on the issue of the implied covenant of good faith

---

**2.** The parties have stipulated that plaintiffs are not claiming any damages for any alleged price

discrimination in favor of CCA for sales of the 1648 Key system prior to January 1984.

and fair dealing because plaintiffs had failed to tie the tort action to an express clause in the contract as is required under New York law.[3] After a jury trial on the other two claims, the jury found in favor of defendants. In answer to special interrogatories, the jury found that defendants had failed to prove their meeting-competition defense but had proven their changing conditions defense to the § 2(a) price discrimination claim. The jury was divided on the issue of whether the telephone systems sold to SWBT were of "like grade and quality" as the systems sold to plaintiffs as is required by § 2(a) of the Robinson–Patman Act.

After the jury verdict, plaintiffs filed a motion for a new trial and renewed their motion for a directed verdict on the changing conditions defense. The district court denied the motions. Plaintiffs then filed this appeal.

## DISCUSSION

I. *The Antitrust Defense of Changing Conditions*

Section 2(a) of the Robinson–Patman Act prohibits discriminatory pricing of goods of like grade and quality which might substantially lessen competition or create a monopoly.[4] However, the act does allow price differences from time to time:

"in response to *changing conditions* affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned."

**3.** Both parties agree that New York law governs the claim of breach of an implied covenant of good faith and fair dealing. *See* Plaintiffs' Br. at 47.

**4.** Section 2(a) of the Robinson–Patman Act provides in part:
"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality,

15 U.S.C. § 13(a) (emphasis added). In answer to a special interrogatory, the jury found that defendants had proven the changing conditions defense. Plaintiffs seek reversal of the jury verdict and argue: (1) that the district court's jury instruction on the changing conditions defense was erroneous; (2) that the district court erred in submitting the defense of changing conditions to the jury; and (3) that there is no evidence to support the jury's finding that the defense had been proven.

A. Jury instruction

Plaintiffs argue that the district court's jury instruction on the changing conditions defense did not correctly reflect the law in two respects: (1) it did not set forth the examples of changing conditions that are found in § 2(a) of the Robinson–Patman Act (i.e., "actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned"); and (2) the jury instruction, as interpreted by plaintiffs, states that generally declining prices constitute a changing condition. The jury instruction reads as follows:

"In addition, defendants have raised as a defense that their sales at reduced prices are permissible under the changing-conditions provision of the Robinson–Patman Act. Under this provision, sellers are permitted to make discriminatory changes in price in response to changing conditions affecting the market for or the marketability of the goods sold. *Defendants claim that they sold at a lower price than to plaintiffs because of obsolescence of some goods and changes in the market itself which caused prices to decline.*

where either or any of the purchases involved in such discrimination are in commerce, ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them...."
15 U.S.C. § 13(a).

If you find that defendants' lower-price sales were made for this reason, then you must find for defendants and against plaintiffs on plaintiffs' Robinson–Patman Act claim under Section 2(a). If you find that defendants' price reductions were not made for this reason, then you must find that defendant[s] [have] not established the changing conditions defense. Again defendants have the burden of proving this defense by a preponderance of the evidence."

R.Doc. 316, Instruction 15–G (emphasis added).

■ When considering a party's challenge to jury instructions, our initial inquiry is whether the party properly preserved that issue for appeal by objecting at the district court level to the instruction on the same grounds raised on appeal. *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1514 (10th Cir. 1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); Fed.R.Civ.P. 51. A party's objection to a jury instruction must be sufficiently clear such "that the grounds stated in the objection [are] obvious, plain, or unmistakable." *Aspen Highlands*, 738 F.2d at 1514. Moreover, "the offering of a proposed instruction does not preserve a challenge to the court's instructions under Rule 51, absent a specific objection." *Id.* at 1515.

■ After careful review of the record, we find that plaintiffs did object below to the failure of the jury instruction to list the examples of changing conditions set forth in the statute. Plaintiffs may therefore raise that issue on appeal.[5] However, we find that plaintiffs did not object to the jury instruction on the grounds that it suggested that declining prices constitute a changing condition. Plaintiffs are therefore precluded from raising that issue on appeal.[6] Plaintiffs' submission of their own jury instruction—which defined in greater detail what constitutes a changing condition—was not

---

5. On appeal, plaintiffs also argue that the examples listed in the statute were necessary to the jury instructions because without those examples "the instruction did not differentiate between the products involved in the price discrimination or make it clear that the defense could only justify price reductions after the alleged change occurred." Plaintiffs' Br. at 36. However, plaintiffs failed to object below to the jury instruction on these grounds and therefore we do not consider them.

6. The district court held a jury instruction conference during which proposed instructions could be submitted by counsel and objections to jury instructions could be made. During that conference, plaintiffs made the following objections to the changing conditions defense instruction.

"THE COURT: All right. The next proposed instructions are the changing conditions defense, which I will number Plaintiffs' proposal as 15G.

. . . .

MR. GIFFIN [plaintiffs' counsel]: Yes, sir, Your Honor. This—the changing conditions defense is—even as outlined in the ABA proposed jury instructions, talks about eminent deterioration of the perishable goods. I mean, we don't have that in this case. Obsolescence, distress sales, sales in good faith upon discontinuance of business and the goods sold.

None of those provisions is in Defendants' proposal. They took those out of the ABA proposal. I mean, we would be satisfied to use the ABA with those conditions in it. I don't think the—well, that's another matter, but I don't think—

THE COURT: Your point is that the ABA shows really the inapplicability of this defense to this case?

MR. GIFFIN: I believe I'm right on that, Your Honor. Let me—changing conditions defense is page E35. Yes. I mean, it's—it talks about [imm]inent deterioration of p[e]rishable goods. All the points that we have in our—in our proposed instructions are in the ABA proposed instruction. And although that's another issue, frankly, I mean, this—this defense—there's been no evidence on it. But if such an instruction is given, I think the jury should be clearly told about what the changing conditions are and that it relates to these p[e]rishable goods, things like that."

R.Vol. XIV at 2315–16. After the instructions were given to the jury, the district court allowed counsel to make any additional objections to the instructions. Plaintiffs' counsel made no further objection to the changing conditions jury instruction. Plaintiffs raised the issue of whether declining prices constitute a changing condition when they renewed their motion for a directed verdict after the jury had returned a verdict against plaintiffs. However, this was not a timely objection. Fed.R.Civ.P. 51.

enough to preserve that issue for appeal.[7] We will, therefore, review the jury instruction on the changing conditions defense only to determine whether the district court erred in omitting the examples found in the statute.

When deciding whether a possible error in a jury instruction mandates reversal, "we review the record as a whole to determine whether the instructions 'state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.'" *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir.1988) (quoting *Ramsey v. Culpepper*, 738 F.2d 1092, 1098 (10th Cir.1984)).

■ Section 2(a) of the Robinson–Patman Act provides that price differences may arise in response to changing conditions "such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned." 15 U.S.C. § 13(a). Although the factual scenarios that give rise to the changing conditions defense are not confined to those specifically set forth in the statute, the changing conditions defense is limited to circumstances which are similar to those named in the statute. *Moore v. Mead Service Co.*, 190 F.2d 540, 541 (10th Cir.1951), *cert. denied*, 342 U.S. 902, 72 S.Ct. 290, 96 L.Ed. 675 (1952). Therefore, the examples listed in the statute provide the fact finder with a guide by which it can determine whether the alleged changing conditions constitute a defense against a charge of price discrimination.

■ Of the four examples listed in § 2(a), obsolescence has the greatest applicability to the facts of this case. Defendants argue that discounts were necessary because some of their telephone systems became obsolete as technology developed. Although the statute speaks of obsolescence of seasonal goods, price differences as a result of technological obsolescence or the introduction of a new product model are circumstances sufficiently similar to the examples named in the statute that they fall within the general scope of the statute. *Cf. id.; Peter Satori of Cal., Inc. v. Studebaker–Packard Corp.*, 1964–Trade Cases ¶ 71,309 (S.D.Cal.1964); *Valley Plymouth v. Studebaker–Packard Corp.*, 219 F.Supp. 608, 610 (S.D.Cal.1963); 3 E. Kintner & J. Bauer, *Federal Antitrust Law* § 25.5 (1983); Scher, *Living with the Robinson–Patman Act: Meeting Competition and Changing Conditions Defense*, 53 Antitrust L.J. 943 (1984) ("the defense is available to justify price reductions relating to obsolete merchandise").

■ The instruction given by the district court listed as a changing condition "obsolescence of some goods and changes in the market itself which caused prices to decline." R.Doc. 316, Instruction 15–G. This instruction adequately reflects the law and does not provide grounds for reversal.

B. Should the changing conditions defense have been submitted to the jury?

Plaintiffs next argue that defendants have presented no evidence that supports the changing conditions defense and that therefore the defense should not have been submitted to the jury. Plaintiffs filed a timely motion for a directed verdict on the changing conditions defense which the district court rejected. Instead, the district court submitted the changing conditions defense to the jury, and the jury found that the defense was proven. Plaintiffs now

---

**7.** "[A] new trial should be ordered in the absence of an objection below if an error in the instructions resulted in a miscarriage of justice, and we review instructions to which proper objection was not made only if they are patently plainly erroneous and prejudicial." *Aspen Highlands*, 738 F.2d at 1516 (quotations and footnotes omitted); *see Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1054 (10th Cir.1988). Even assuming that declining prices cannot constitute a changing condition, we cannot conclude that the instruction was "patently plainly erroneous and prejudicial," *Aspen Highlands*, 738 F.2d at 1516 (quotation omitted), because we do not read the instruction as necessarily suggesting that declining prices alone constitute a changing condition.

appeal the denial of their motion for directed verdict.

We review the denial of a motion for a directed verdict de novo and "determine whether, under the evidence presented, the jury could properly find a verdict for the plaintiffs." *Zimmerman v. First Fed. Sav. & Loan Ass'n,* 848 F.2d 1047, 1051 (10th Cir.1988). After a review of the record, we find that there was sufficient evidence presented at trial to permit the district court to submit this defense to the jury.

■ Under the statutory language of the changing conditions defense, price differences are excepted from liability if they are in response to changing conditions which affect either: (1) the market for the goods, or (2) the marketability of the goods concerned.[8] *See, e.g.,* E. Kintner & J. Bauer, *supra,* at § 25.2; F. Rowe, *Price Discrimination Under the Robinson–Patman Act* 322 (1962); J. Von Kalinowski, 5 *Antitrust Laws and Trade Regulation* § 32.04[1] (1989); *see also* Task Force of the Section of Antitrust law of the ABA, *Sample Jury Instructions in Civil Antitrust Cases* at E–35 (1987) (changing conditions defense includes "other reasons, such as changes in the market itself which caused prices to decline").[9]

■ Under the proviso, the seller can respond with a price change when its goods become unmarketable and "when certain special and temporary conditions involving the industry in general, as opposed to conditions affecting the seller's goods in particular, adversely affect the saleability of its products." E. Kintner & J. Bauer, *supra,* § 25.2 at 440.

■ Here, we hold that there was sufficient evidence of a changing condition to support the giving of this instruction. There is evidence in the record that indicates that defendants sold some of their telephone systems at a discount because the systems had become obsolete. For example, in June 1983, UCS was offered a discount on defendants' NEAX 22 PBX systems because UCS was having difficulty selling the NEAX 22 system to the University of Oklahoma once the University learned that the NEAX 22 system was being replaced by the more advanced NEAX 2400 system.

The record further supports that defendants offered discounts in late–1984 on the 1648 Key systems in order to dispose of outdated models. Moreover, there was evidence that defendants' 1648 Key system was competing against newer Key systems developed in 1984 by defendants' competitors. Therefore, there was sufficient evidence such that a jury could properly find that some discounts were given because of the obsolescence of some of defendants' products.

**8.** The legislative history indicates that the purpose of the provision was to facilitate the "ready disposition of goods characterized by fluid market conditions," H.R.Rep. No. 2287, 74th Cong., 2d Sess., pt. 1, at 12 (1936), *reprinted in* 4 Kintner, *The Legislative History: Federal Antitrust Laws and Related Statutes* 3190 (1980) [hereinafter *"Leg. History"*], and to "take care of recognized changes in market conditions, as well as to take care of seasonal and perishable goods." 80 Cong.Rec. 6426 (1936), *reprinted in Leg. History, supra,* at 3138 (statement by Senator Austin who proposed the Senate's amendment to § 2(a) which constitutes the changing conditions defense); *see also* F. Rowe, *Price Discrimination Under the Robinson–Patman Act* 328 (1962).

**9.** A United States Attorney General Report explains that:

Because we view the 'changing conditions' proviso as designed to promote competitors' freedom to react realistically to the spontaneous movements of a dynamic market, a broad interpretation of this provision would, in our opinion, comport best with the Congressional intent as well as broader antitrust objectives. We believe, therefore, that an independent significant meaning might be accorded to the statutory phrase 'changing conditions affecting the market' to which a competitor might respond by revising his price—wholly apart from the 'marketability of the goods concerned,' the second statutory factor which the enumerated examples in the proviso illustrate. In any event, we view the significant common denominator in these far from homogeneous examples *not* as a deterioration of the seller's goods or business position, but as a *spontaneous shift in market conditions beyond the seller's control ....*

*Report of the Attorney General's National Commission to Study the Antitrust Laws* 178–179 (1955) (emphasis in original).

■ Plaintiffs failed to seek more specific instructions differentiating between products and/or alleged incidents of price discrimination, and they failed to seek a clarification of the jury verdict prior to the dismissal of the jury. Therefore, we will not consider on appeal whether the changing conditions defense applied to some but not all of the transactions and therefore should not have been submitted to the jury as to the specific volume discounts.[10] *See Wren v. Spurlock,* 798 F.2d 1313, 1321 (10th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987); *Bell v. Mickelsen,* 710 F.2d 611, 615 (10th Cir. 1983).

C. Is there sufficient evidence to support the jury's finding of the changing conditions defense?

■ When a jury verdict is challenged on appeal, our review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision. *Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987). In light of the foregoing discussion affirming the denial of a directed verdict, it is clear that there was evidence in the record which supports the jury's affirmative response to the special interrogatory asking whether the changing conditions defense was proven. Therefore, the jury's verdict will not be disturbed.[11]

## II. *Denial of Rebuttal Evidence*

■ Plaintiffs also seek a new trial because the district court refused to permit plaintiffs to submit rebuttal evidence on the issue of whether the 1648 Key system sold to SWBT was substantially different from the 1648 Key system sold to plaintiffs. A district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties. *See Thweatt v. Ontko,* 814 F.2d 1466, 1470 (10th Cir.1987); *see also Marsee v. U.S. Tobacco, Co.,* 866 F.2d 319, 324 (10th Cir.1989). Here, the district court did not abuse its discretion in refusing to admit plaintiffs' proffered rebuttal evidence.

Plaintiffs argue that the testimony of defense witness Gerard Meyer concerning differences between the old and new 1648 Key systems was a surprise to them and therefore warranted allowing plaintiffs to present rebuttal evidence. However, plaintiffs were forewarned that rebuttal evidence would be permitted only if the party requesting rebuttal could show compelling reasons why the need for the evidence could not have been reasonably anticipated and the evidence presented during the case-in-chief. The issue of "like grade or quality" is an element of plaintiffs' § 2(a) claim and therefore plaintiffs should have anticipated that defendants would attempt to show functional differences in the products sold to SWBT and the products sold to plaintiffs. The alleged inaccuracies of Meyer's testimony could have been addressed during cross-examination. Moreover, the district court noted that it would be a hardship to the court and to defense

10. Thus, we need not consider whether defendant's retroactive offer of volume discounts to plaintiffs may have cured the original discrepancy between prices offered to SWBT and plaintiffs.

11. Plaintiffs also challenge the jury's verdict in favor of defendants on the issue of intentional interference with prospective economic relations. Plaintiffs argue that because the jury instruction on the changing conditions defense was in error, it tainted the jury's view of the intentional interference claim as well. They additionally argue that there was insufficient evidence to support the jury's verdict. This challenge fails in two respects. First, because we hold that the jury instruction on changing conditions was not in error, it cannot provide a basis for undermining the jury's verdict on the intentional interference claim. In addition, failure to move for a directed verdict precludes later appellate review of the sufficiency of the evidence. *See Koch v. City of Hutchinson,* 814 F.2d 1489, 1496 (10th Cir.1987), *reh'g in part, on other grounds,* 847 F.2d 1436 (10th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). Since plaintiffs failed to demonstrate where in the record they moved for a directed verdict on the issue of intentional interference with prospective business relations, they cannot challenge on appeal the sufficiency of the evidence supporting the jury's verdict on the intentional interference claim. 10th Cir.R. 28.-2(d).

counsel to allow the rebuttal evidence, because it would require additional time for the defense to depose the new rebuttal witness and to prepare possibly to impeach the witness.

Because plaintiffs were warned that rebuttal evidence would be restricted and because they reasonably could have anticipated defendants' evidence of functional differences between the telephone systems sold, there is no showing of any manifest injustice to plaintiffs. It was within the district court's discretion to disallow plaintiffs' rebuttal evidence.

### III. *Jury Instruction of Functional Availability of Volume Discounts*

■ Plaintiffs also challenge the jury instruction on the availability of volume discounts, arguing that the instruction was erroneous because it did not properly address the required showing that the volume discounts were equally or functionally available to all purchasers.[12] As discussed above, a jury instruction mandates reversal only if after a review of the whole record we find that the instruction fails to " 'state the law which governs and [fails to] provid[e] the jury with an ample understanding of the issues and the standards applicable.' " *Big Horn Coal Co.*, 852 F.2d at 1271 (quoting *Ramsey*, 738 F.2d at 1098).

The jury instruction on volume discounts reads as follows:

"EQUAL AVAILABILITY

If you find that defendants' volume discounts were *functionally available* to the plaintiffs, then as a matter of law either there is no price discrimination or the discrimination is not the proximate cause of injury. The implementation of a

**12.** Plaintiffs preserved this issue for appeal because they adequately objected to this jury instruction at the district court level on these grounds. R. Vol. XIV at 2299–01.

**13.** Plaintiffs' proposed instruction provides in relevant part:
"VOLUME DISCOUNTS—AVAILABILITY
Volume discounts can also constitute price discriminations under the Robinson–Patman

discount program need not guarantee that all customers benefit to the same degree as other customers, as long as the program is evenly administered."

R.Doc. 316, Instruction 15–C–3 (emphasis added). The instruction accurately reflects the law of *FTC v. Morton Salt Co.*, 334 U.S. 37, 41–43, 68 S.Ct. 822, 825–826, 92 L.Ed. 1196 (1948), which holds that discounts must be more than merely offered to all purchasers but must be "functionally" available to all purchasers.

In *Morton Salt,* the Court held that volume discounts constitute impermissible price discrimination if "[t]heoretically, [the] discounts are equally available to all, but functionally they are not." *Id.* at 42, 68 S.Ct. at 826. In applying *Morton Salt,* courts have consistently stated that "[w]here a purchaser does not take advantage of a lower price or a discount which is functionally available on an equal basis, it has been held that either no price discrimination has occurred, or the discrimination is not the proximate cause of the injury." *Shreve Equip., Inc. v. Clay Equip. Corp.,* 650 F.2d 101, 105 (6th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981). *See also Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1326 (6th Cir. 1983) (no Robinson–Patman violation "if the concessions are available equally and functionally to all customers"); *FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1025 (2d Cir.1976) (discounts permissible if "available to all purchasers, not only in theory but in fact"), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

■ Plaintiffs argue that the district court should have given their proposed jury instruction, which defined "functionally available" in greater detail.[13] However,

Act even if the same range of discounts were offered to all purchasers from defendants. Thus, a single schedule containing a range of discounts based upon volume of purchases could constitute price discrimination under the act if the maximum discount level is not functionally available to all purchasers.
To be functionally available to all purchasers means that the level of discounts offered by defendants were equally available to all

"jury instructions are not mathematical equations to be computed with rigid formality. So long as the relevant instructions on the whole offered the jury an accurate statement of the law ... we will not disturb the district court's determination of instructions." *United States v. Willis*, 890 F.2d 1099, 1104 (10th Cir.1989). Although the district court's instruction was abbreviated, it contained substantially the same information as plaintiffs' proposed instruction. *See Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir.1984); *see also United States v. Gomez–Olivas*, 897 F.2d 500, 502 (10th Cir.1990). The instruction is an accurate statement of the law and therefore does not provide grounds for reversal.

IV. *Summary Judgment on Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs also appeal from the summary judgment in favor of defendants on the issue of whether defendants breached their implied covenant of good faith and fair dealing in connection with the distributorship contracts between plaintiffs and defendants. The district court granted summary judgment to defendants because it held that plaintiffs had failed to show "some breach of, or threat to breach, the underlying contract forming the relationship between the parties." R.Doc. 305 at 10. When reviewing a summary judgment order, we apply the same standard as the district court to determine whether there is a genuine issue of material fact or whether the moving party is entitled to a judgment as a matter of law. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988); Fed.R.Civ.P. 56. Because there is express language in the contracts between plaintiffs and defendants which arguably was breached by defendants, the district court erred in granting summary judgment to defendants.

New York case law recognizes that all contracts include an implied covenant of good faith and fair dealing. *See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (Ct.App.), *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972). The implied covenant "is in aid and furtherance of other terms of the agreement of the parties." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334–335, 506 N.E.2d 919, 921–922, 514 N.Y.S.2d 209, 212 (1987) (quoting *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 304, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (Ct.App.1983)); *see also Associates Capital Svc. Corp. v. Fairway Private Cars, Inc.*, 590 F.Supp. 10, 16 (E.D.N.Y.1982); *Caceci v. Di Canio Constr. Corp.*, 72 N.Y.2d 52, 60–61, 526 N.E.2d 266, 270, 530 N.Y.S.2d 771, 775 (Ct.App.1988) ("[I]t has long been the law in New York that courts will imply a covenant of good faith where the implied terms are consistent with other mutually agreed upon terms.").

In this case, the contracts specifically state that "[defendants] shall endeavor to treat all of [defendants'] Sales Associates fairly in accordance with their respective capabilities and financial strengths." Plaintiffs' Ex. 1 at 7; Plaintiffs' Ex. 109 at 7. That express language in the contracts, coupled with the implied covenant of good faith and fair dealing, suggests the existence of a genuine issue of material fact as to whether defendants breached the contract and their implied covenant of good faith and fair dealing by not "treat[ing] all of [their] Sales Associates fairly in accordance with their respective capabilities and financial strengths." *Id.* We intimate no view as to how that matter may be resolved at trial, but we do conclude that the district court erred in granting summary judgment to defendants on the issue of defendants' alleged breach of their implied covenant of good faith and fair dealing under the contracts.

V. *Sanctions*—Appeal No. 88–2333

Plaintiffs also appeal the district court's imposition of sanctions against plaintiffs

---

purchasers. If only large purchasers from defendants could, as a practical matter, qualify for the highest level of discount, then defendants' discounts were not functionally available to plaintiffs and therefore the price discrimination element of section 2(a) has been satisfied."
R.Doc. 285.

for their failure to meet a discovery deadline. The underlying facts which led to the sanctions are as follows. In December 1986, a scheduling order was entered by the court which set a August 1, 1987 deadline for completion of discovery and a September 1987 deadline for all pretrial filings. In July 1987, the district court entered a Stipulated Amended Scheduling Order which set a deadline of September 1, 1987, for plaintiffs' damage study. Plaintiffs failed to comply with the deadline, and submitted their damage study 50 days late. Plaintiffs did not file a timely motion requesting an extension of the deadline. Plaintiffs state that they inadvertently did not seek the extension of the deadline because of the uncertainty of the length of the delay, a heavy discovery schedule, and a change in lead counsel.

Defendants filed a motion for sanctions against plaintiffs for failure to meet the deadline for the damage study. On December 18, 1987, the district court heard argument on defendants' motion for sanctions. Plaintiffs argued that the delay in submitting the damage study was because of the unexpected travel of the experts preparing the study and a change of the lead attorney dealing with the case. During the hearing, the district court noted that the trial was set for February 1988. Plaintiffs argue that they had not been previously advised of that date. The district court later postponed the trial until March, 1988.

After the hearing on defendants' motion for sanctions, the district court decided that defendants should be allowed to take specified depositions at plaintiffs' expense. Defendants took a second deposition of the executive vice president of Southwest Utilities and deposed three employees of the firm that prepared plaintiffs' damage study. The district court imposed $8,988.51 as sanctions under Rule 16(f). The sanctions included $3,813.51 in travel and transcription costs and $5,175 in attorney's fees for the four depositions.

In determining whether a district court abused its discretion in imposing sanctions, we look at the "totality of the circumstances, including the specific case under review, the total management problems for courts, and access and cost problems for litigants." *In re Baker*, 744 F.2d 1438, 1440 (10th Cir.1984) (en banc), *cert. denied*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). Rule 16(f) was designed to give the district courts "very broad discretion" in imposing sanctions. *Id.*

The imposition of sanctions here falls within the "very broad discretion" of the district court. The unexpected travel of plaintiffs' experts and the change of their lead attorney alone do not justify the failure to meet the discovery deadlines. Moreover, plaintiffs did not file a timely motion for extension of time even though they knew prior to September 1 that they were not going to meet the deadline. Plaintiffs' argument that they had not anticipated a February trial date is not persuasive because they were aware of the impending deadline for all discovery. Plaintiffs' assumption that trial would not be scheduled for some months is not a justifiable reason for delay. Nor does the later postponement of the trial cure plaintiffs' delay. *Cf. D G Shelter Products Co. v. Forest Products Co.*, 769 F.2d 644, 645 (10th Cir.1985) (the district court's "past laxness" does not alter appellate court's analysis of the sanctioned party's actions).

In addition, the amount of the sanctions is reasonable.[14] Rule 16 of the Federal Rules of Civil Procedure states that:

> in lieu of or in addition to any other sanction, the judge shall require the party ... to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

---

**14.** Defendants argue that plaintiffs have waived any challenge to $3,813.51 of the sanctions which go to the travel and transcription costs of the depositions. Defendants' Br. at 21. How-

ever, because we affirm the award of sanctions in its entirety, we do not address the waiver issue.

Fed.R.Civ.P. 16(f). Although mathematical exactitude is not required, there should be "a sufficient nexus between noncompliance with the rules and the amount of fees and expenses awarded as a sanction." *Turnbull v. Wilcken,* 893 F.2d 256, 259 (10th Cir.1990).

The district court ordered depositions at the expense of plaintiffs because it was the court's "belief that if [plaintiffs] complied with the scheduling order and if they had notified the Court in a timely fashion about this problem, that all this could have been obviated." R. Vol. XVII at 7. The district court explained his sanctions decision as follows:

> "Well, counsel, just so you know, that's precisely why I focused the sanctions in the way I have. And that is I've tied them to your failure to file the damage study in accordance with the pretrial order of this Court. And instead of it being filed on September 1, the record reflects it was filed on October 20th. And I assume that that's something in the neighborhood of 50 or 55 days late....

> And the problem that I have is this. If you took depositions during that time period that he would have been able to take otherwise and intelligently examine these witnesses with respect to the damage study—I'm going to give him the opportunity to get back what he would have had if you had complied with the order in a timely fashion, and that is depositions of those witnesses."

*Id.* at 16. Therefore, the amount of the sanctions was reasonable because the district court created a "sufficient nexus between noncompliance with the rules and the amount of fees and expenses awarded as a sanction." *Turnbull,* 893 F.2d at 259.

## CONCLUSION

We AFFIRM the district court's denial of plaintiffs' motion for a directed verdict on the changing conditions defense and the final judgement based on the jury finding of no § 2(a) violation. We AFFIRM the judgment against plaintiffs based on the jury finding of no intentional interference with prospective business relations. We REVERSE the March 21, 1988 summary judgment order in favor of defendants on the issue of breach of an implied covenant of good faith and fair dealing. We AFFIRM the district court's award of sanctions imposed against plaintiffs for failure to meet discovery deadlines. Finally, we REMAND for further proceedings consistent with this opinion.